F. F. G. Harper & Co. *v.* United States (No. 3898)[1]

United States Court of Customs and Patent Appeals, November 4, 1935

*Walden & Webster (Edward F. Jordan* of counsel) for appellant.
*Joseph R. Jackson,* Assistant Attorney General *(Charles D. Lawrence,* Special Assistant to the Attorney General, and *Joseph F. Donohue,* special attorney, of counsel), for the United States.

[Oral argument October 11, 1935, by Mr. Jordan and Mr. Lawrence]

Before Graham, Presiding Judge, and Bland, Hatfield, Garrett, and Lenroot, Associate Judges

Garrett, Judge, delivered the opinion of the court:

During the period when the Tariff Act of 1922 was in effect, appellant imported, through the port of San Francisco, Calif., certain merchandise invoiced as "dried egg yolk," the importation being from China.

The Collector of Customs classified it as dried egg yolk, under paragraph 713 of the Tariff Act of 1922, assessing duty at 18 cents per pound. Importer filed protest in which alternative claims were made. The claim finally relied upon here is that the merchandise should be classified as egg yolk prepared and assessed with duty at only 6 cents per pound under another provision of the same paragraph.

The United States Customs Court (Third Division), holding that the importer had failed to overcome the presumption of correctness attaching to the collector's classification, rendered judgment overruling the protest and, after petition for rehearing was denied, the instant appeal was taken.

The paragraph reads:

Par. 713. Eggs of poultry, in the shell, 8 cents per dozen; whole eggs, egg yolk, and egg albumen, frozen or otherwise prepared or preserved, and not specially provided for, 6 cents per pound; dried whole eggs, dried egg yolk, and dried egg albumen, 18 cents per pound.

---

[1] T. D. 48027.

The Government contends that, on the record, the issue is *stare decisis* under the case of *French Kreme Co. et al.* v. *United States*, 18 C. C. P. A. (Customs) 301, T. D. 44505. The importer insists that the record here is sufficient to differentiate the cases.

The testimony in the case was reviewed with sufficient fullness and quite fairly by the trial court, and there is no reason for us elaborating upon it.

The merchandise involved in the *French Kreme Co.* case, *supra*, was substantially the same as that involved in a prior case of the same style, reported in 16 Ct. Cust. Appls. 126, T. D. 42768, the record of which was made a part of the record of the second case heard. In the second of those cases, the question of commercial designation was pressed more earnestly than in the first and the additional proof presented related mainly to that issue.

The merchandise in both cases consisted of dried egg yolk in the form of powder. We had occasion there also to refer to and, to some extent, consider a "native" or "granular" egg yolk.

In the instant case it is claimed that the egg yolk is "flaky" or "in the form of small flakes" and that it is "recognized to be of a different class than either powdered or granular."

However, we do not understand that appellant relies particularly upon any difference in the shape of the particles into which the respective egg yolks may have been fashioned. In the final analysis, its reliance seems to be solely upon a showing that the merchandise here involved was kept at low temperatures, and hence it is urged that it was of a different nature in a tariff sense from that involved in the prior cases.

It was imported under refrigeration, being kept at a temperature of 12 degrees Fahrenheit while in transit from China to the United States, stored at zero temperature after reaching this country and shipped under refrigeration in this country to purchasers here.

Hence it is insisted that the product was not "preserved" by any drying process and does not fall within the meaning of "dried egg yolk," as found by the collector. The argument is, in effect, that it was preserved by refrigeration, not by drying, and that, therefore, while it was prepared it was not preserved in the sense which the word "preserved" is used in paragraph 713, *supra*.

No evidence was offered showing the manner or process by which the yolk was prepared and no sample of the imported merchandise seems to have been available for introduction when the evidence was being taken. An illustrative exhibit of a product made from the whole egg rather than from just the yolk was introduced and, there is testimony to the effect that it fairly illustrates the nature or physical characteristics of the merchandise at issue, but this is not particularly helpful in determining the question here.

To sustain appellant's position here would require, first, a holding that the provision for "dried egg yolk" dutiable at 18 cents per pound was intended to include only egg yolk that had been processed by drying alone so as to be preserved, and, second, a holding that because the merchandise involved was kept at low temperature during shipment and storage, it must be inferred that it had not been so processed.

The first of these postulates presents a question of law, and the second a question of fact.

Upon the question of law it is unnecessary to pass, because even if it were determined in appellant's favor, the court would not be justified in drawing the factual inference that would have to be drawn in order for appellant to prevail.

The report of the appraiser describing the merchandise states:

\* \* \* It consists of egg yolk which has been dried.

The report of the collector says:

18c. lb. "Dried Egg Yolk" Appraiser's adv. classification—Dried Egg Yolk—Assessed under Par. 713 Act Sept. 1922.

In our opinion, merely proving that the merchandise was imported and handled "under refrigeration" is not sufficient to overcome the presumption of correctness attaching to the collector's classification, and the trial court was right in so holding.

The judgment is *affirmed.*